JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

August 3, 2023

**VIA ECF**

Honorable Lee G. Dunst
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

Re:   *Garcia v. 10 Roads Express, LLC, et al*, 22 CV 2783 (JMA)(LGD)

Dear Judge Dunst:

We represent the Plaintiff in this putative class action.  I write (a) to inform the Court that Defendants have, with the assistance of counsel, engaged in outrageous highly misleading and inappropriate communications with putative class members seeking to procure favorable testimony and releases of claims in this Lawsuit, and (b) to seek appropriate relief/sanctions, including invalidation of any releases or verifications obtained as a result of the wrongful communications, the issuance of corrective notice, and monetary sanctions.  Given the time sensitive nature of this application and the impact it could have on the putative class, Plaintiff also requests that the Court schedule a videoconference as soon as practicable, and that representative of both Defendants (which are out of state corporations) be required to appear at the conference.[1]

**I.      Background**

As the Court is aware, the Plaintiff in this action worked for Defendants as a tractor-trailer driver.  He alleges that he and other similarly situated drivers were manual workers as defined by N.Y. Lab. L. § 190, and Defendants therefore violated N.Y. Lab. L. § 191 by paying them on a biweekly basis instead on a weekly basis.  Pre-class certification is now closed, and Plaintiff is preparing to submit a pre-motion letter for his Rule 23 motion.

On August 2, 2023, we learned that—without Court approval and unbeknownst to Plaintiff—Defendants sent putative class members a letter dated July 25, 2023 (the "Letter") seeking a release of the claims in this action in exchange for a payment of $250 or $500, depending on the length of employment, and a "verification" for use in this lawsuit in which a driver would "attest" that s/he was not a manual worker.  A true and correct copy of the Letter is attached hereto as Exhibit 1.  The Letter states that the accompanying settlement agreement and verification were created by Defendants' attorneys.  (Ex. 1 at 1 ("Enclosed please find the Settlement and Release Agreement and a Verification of Driver that our attorneys have created.").)  The Letter explicitly requires drivers to sign **both** documents in order to receive payment: "If you would like to participate, please sign both documents and forward them back to our office in the envelope

---

[1] Pursuant to Rule IV.A.1 of Your Honor's Individual Rules, the undersigned conferred with counsel for Defendants via telephone earlier today to inform them of this issue and they do not consent to the relief requested herein.

provided.  Once received, the company will provide you a check or direct deposit in the amount described." (*Id.*)

This communication is highly misleading and coercive.  Based on faulty background information as described below, the communication (a) gives the false impression that the putative class members' potential recovery in this case is very small, (b) seeks to dissuade putative class members from remaining in the case, (c) contains a confusing release, and (d) essentially offers to pay witnesses to provide favorable testimony by requiring putative class members to sign a "verification" for use in this action in order to receive the settlement payment.  As such, any releases or verifications that Defendants receive as a result of the Letter should be voided, a Court-approved corrective notice should be sent to everyone to whom Defendants sent the Letter, and Defendants and their counsel should be sanctioned.

## II.     Defendants engaged in improper communications

"Fed. R. Civ. P. 23(d) authorizes the court to regulate communications with putative class members even before certification."  *Dziennik v. Sealift, Inc.*, No. 05 CV 4659, 2006 U.S. Dist. LEXIS 33011, at *8 (E.D.N.Y. May 23, 2006).  "[I]t is well established that 'when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization.'"  *Li v. Fleet N.Y. Metro. Reg'l Ctr. LLC*, No. 21 CV 5185, 2022 U.S. Dist. LEXIS 93927, at *29 (E.D.N.Y. May 25, 2022) (quoting *Gortat v. Capala Bros.*, No. 07 CV 3629, 2009 U.S. Dist. LEXIS 101837 (E.D.N.Y. Oct. 16, 2009).  "'Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice generally.'"  *Dziennik*, 2006 U.S. Dist. LEXIS 33011, at *9 (quoting *In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988)); *see also In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) ("A court must take steps to further the policies embodied in Rule 23.  One policy of Rule 23 is the protection of class members from 'misleading communications from the parties or their counsel.'").  For the reasons set forth below, Defendants' dissemination of the Letter was improper and sanctionable conduct.

### a.    Defendants are seeking to buy favorable testimony

The Letter conditions payment of the settlement amount on a driver signing *both* a settlement agreement *and* a form verification supporting Defendants' position in this action.  (Ex. 1 at 1 & Ex. B (Verification of Driver).)  This is a blatant attempt to buy favorable testimony.  It is highly improper and a clear "threat to the fairness of the litigation process . . . and the administration of justice generally" for which sanctions are necessary.  *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841, 2015 U.S. Dist. LEXIS 145563, at *7 (S.D.N.Y. Oct. 27, 2015) (internal quotation marks omitted).

### b.    The Letter is misleading and coercive

The Letter's reference to the settlement in *Misenhelder v. 1650 Broadway Associates Inc.*, Case No. 09 CV 1147 (S.D.N.Y.), one of this firm's smallest ever class settlements[2], is highly

---

[2] Joseph & Kirschenbaum LLP's many class action settlements that post-date *Misenhelder* include but are not limited to *Gordon v. BlueTriton Brands, Inc.*, Index No. 616877/2022 (N.Y. Sup. Ct. Nassau County) ($8,400,000 settlement

misleading and aimed at convincing putative class members that their claims in this action are worthless.  The Letter's statement that *Misenhelder* asserted a "similar 'class action claim'" (Ex. 1 at 1) to the claim in this action is outright false.  *Misenhelder* asserted claims for an unpaid tip credit, off the clock work, spread of hours, and misappropriated gratuities.  The misappropriated gratuities claim was the largest in the case, and the value of that claim was approximately $90,000, slightly less than the settlement amount of $91,500.  This case asserts a totally different type of claim – a claim for untimely payment of wages – for which the damages are liquidated damages equal to the wages earned in every other week.  These damages – essentially half of each putative class member's annual pay – are substantially higher than those in *Misenhelder*.  By way of example, Plaintiff's annual compensation from Defendants, including for partial years, ranged from approximately $5,932 to approximately $100,104.  Using the math in the Letter, the average per class member recovery in *Misenhelder* was $154.82.  It is obvious that Defendants chose this example in order to make drivers believe that their potential recovery in *this* action is very low and thus they should accept the paltry $250 or $500 that Defendants are offering them.  Moreover, Defendants apparently conducted an exhaustive search of Plaintiff's counsel's many class action settlements in order to cherry pick this 2010 settlement, which, as noted above, is one of the firm's lowest ever class action settlements.[3]  The misleading nature of the *Misenhelder* reference is heightened by the fact that the Letter never tells the drivers how their damages would be calculated in this case or the length of the liability period (from May 12, 2016 to the time of trial), preventing drivers from accurately evaluating their potential damages in this action.  Defendants' emphasis on Plaintiff's counsel's recovery is also improper, as "the accusation that plaintiff's counsel is motivated by greed could have a chilling effect on participation." *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *15.

The Letter further improperly seeks to dissuade putative class members from participating in this action by referring to Plaintiff's claims as "concocted" and stating that Plaintiff's employment was terminated for attacking another driver.  While Defendants naturally dispute and defend against Plaintiff's claims, calling them "concocted" gives the false impression that the claims are completely made up.  In reality, Defendants have admitted that they paid drivers biweekly, and the parties dispute what constitutes "manual work."  Plaintiff of course denies that he "physically attacked" a coworker.  Perhaps more importantly, Defendants' allegation to the contrary has nothing to do with the merits of Plaintiff's or the putative class members' claims.  The Letter's reference to that irrelevant allegation is therefore meant to discourage putative class members from participating in this case for a non-merits-based reason.  *See Oconner v. Agilant*

---

for the same claim (N.Y. Lab. L. § 191) asserted in this action); *Lopez v. P E C Group Ltd.*, No. 21 CV 8806 (S.D.N.Y.) ($965,000 settlement); *Tenezela v. Trattoria Tre Colori, et al*, Index No. 520373/2022 (N.Y. Sup. Ct. Kings County) ($600,000 settlement); *Lomeli v. Falkirk Management Corp*, Index No. EF001580/2016 (N.Y. Sup. Ct. Orange County) ($750,000 settlement); *Juarez et al v. Rossini's Place, Inc.*, Index No. 507379/2019 (N.Y. Sup. Ct. Kings Cty.) ($950,000 settlement); *Braunstein v. Hudson Hall, LLC*, No. 19 CV 7983 (S.D.N.Y.) ($950,000 settlement); *Argudo v. Parea Group LLC*, No. 18 CV 0678 (S.D.N.Y.) ($2,500,000 settlement); *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 CV 5124 (S.D.N.Y.) ($2,000,000 settlement); *Ramos v. Le Bernardin, Inc.*, Index No. 525195/2018 (N.Y. Sup. Ct. Kings Cty.) ($650,000 settlement); *Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ($5,250,000 settlement); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) ($8,500,000 settlement); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) ($4,750,000 settlement).

[3] There are no reported decisions on Lexis for *Misenhelder*.  Thus, we believe Defendants conducted a PACER search in order to find the settlement.  D. Maimon Kirschenbaum, the only attorney of record in both *Misenhelder* and this action, has 397 SDNY cases in PACER.

*Sols., Inc.*, 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020) (a court may intervene pre-certification when a defendant "improperly attempts to encourage class members not to join the suit"); *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *7 ("A district court may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate [or] unbalanced[.]").

The release contained in the settlement agreement attached to the Letter is confusing and potentially unfairly overbroad.  By signing the settlement agreement, a driver purports to release "all claims . . . arising from the Disputed Claim[,]" which is defined as the allegation that Defendants' drivers "that should be paid on a weekly basis pursuant to New York Labor Law[.]" (Ex. 1 at Ex. A).  The release further states that it "includes, but is not limited, claims that Eagle and 10 Roads did not pay wages on a weekly basis."  (*Id*.)  As the only claim in this case is that Defendants did not pay drivers on a weekly basis, but the release is not limited to that claim, it is unclear what other claims are covered by the release.

Finally, there is a heightened level of impropriety to the extent that Defendants distributed the Letter to any of their current employees.[4]  "A risk of explicit or implicit coercion exists where the parties are involved in an employment or ongoing business relationship.  Such relationships can transform suggestions, requests, or observations into directives or threats." *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *12.  The statement in the Letter that Defendants "would rather focus our energy on . . . our driver compensation package" is likely to be interpreted by current employees to mean that if they accept the settlement offer and sign the verifications their wages will increase in the future. (Ex. 1 at 1.)

In short, Defendants have engaged in brazenly misleading and coercive communications to garner from putative class members releases of the substantial claims in this Lawsuit.

## III.    Plaintiff and the putative class are entitled to relief

A court may remedy a defendant's improper communications with putative class members in many ways, including invalidating documents obtained through the wrongful communications, requiring corrective notice, and restricting future communications.  *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (5th Cir. 1985) (affirming order prohibiting defense counsel from communicating with class members about the litigation); *Oconner*, 444 F. Supp. 3d at 603 (deeming arbitration agreements obtained from putative class members during the pendency of the litigation unenforceable); *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *28-31 (ordering corrective notice and the production of certain communications and requiring any future communications between defendants and potential opt-in plaintiffs about the lawsuit to be in writing); *Pefanis v. Westway Diner, Inc.*, 2009 U.S. Dist. LEXIS 121378 (S.D.N.Y. Dec. 29, 2009) (invalidating class members' opt outs and requiring the issuance of corrective notice); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 252-54 (invalidating arbitration agreements obtained from putative class members during the pendency of the litigation); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669-70 (E.D. Tex. 2003) (prohibiting defendants from communicating with absent class members about the litigation and ordering corrective notice).

Here, Plaintiff seeks the following: (1) a list of all putative class members to whom Defendants sent the Letter; (2) copies of all signed settlement agreements and verifications

---

[4] Plaintiff's counsel learned of the Letter from a former employee.

4

Defendants have received from putative class members; (3) the voiding of all settlement agreements and verifications Defendants have received from putative class members; (4) the issuance of corrective notice to a putative class members to whom Defendants sent the Letter; (5) a prohibition on Defendants or their counsel communicating with putative class members about this lawsuit until or unless a class certification motion is denied or a class is certified and a class member opts out of the class; and (5) monetary sanctions imposed on Defendants and/or their counsel.

The list of people to whom the Letter was sent and copies of signed settlement agreements and verifications is necessary to determine the full scope and effect of Defendants' improper communications.  Because any signatures to the settlement agreement or verification were wrongfully obtained, those documents should be voided.  In the event that Defendants have already made any payments pursuant to signed settlement agreements, the putative class members who received the payment should be permitted to keep the payment so that Defendants, rather than the putative class members, bear the burden of Defendants' misdeeds.  The Court may sanction Defendants by allowing putative class members to retain these payments pursuant to its inherent power.  *See Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 73 (E.D.N.Y. Mar. 14, 2008), *adopted by* 546 F. Supp. 2d 55 (Apr. 23, 2008).

In addition, corrective notice is plainly appropriate given the highly misleading nature of the Letter and the possibility that some putative class members may have signed the settlement agreement and verification.  Given the egregiousness of Defendants' conduct, including their attempt to pay for favorable testimony, prohibiting them from communicating about the lawsuit with putative class members until and unless a class certification motion is denied or a class member opts out is warranted.  *See Austen v. Catterton Partners V, LP*, 831 F. Supp. 559, 568 (D. Conn. 2011) (noting that courts have imposed restrictions on pre-certification communications where "the parties engaged in serious abuses such as giving false, misleading, or intimidating information, concealing material information, or attempting to influence the decision about whether to seek exclusion from a class") (cleaned up).

Finally, pursuant to the Court's inherent power, Plaintiff respectfully requests that Defendants and, if they participated in the misconduct, Defendants' counsel, be required to pay Plaintiff's counsel's legal fees and costs in connection with this letter and any related proceedings or motion practice.  *See Bowens*, 546 F. Supp. 2d at 73; *Belt*, 299 F. Supp. 2d at 670.  As the Letter states that the settlement agreement and verification were drafted by counsel, Defendants and their counsel in this action should be required to identify counsel's role, if any, in the improper communications.  If Defendants' counsel of record did participate in the misconduct, they should be jointly and severally liable with Defendants for Plaintiff's attorneys' fees and costs pursuant to both the Court's inherent authority and 28 U.S.C. § 1927.

We thank the Court for its attention to this matter.

Respectfully submitted,

**JOSEPH & KIRSCHENBAUM LLP**

    s/*Josef Nussbaum*
Josef Nussbaum

32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

cc: All Counsel of Record (via ECF)