

August 15, 2023

**Celena R. Mayo**
212.915.5854 (direct)
Celena.Mayo@wilsonelser.com

*Via* ECF Only

Honorable Lee G. Dunst
Magistrate Judge for the
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

> RE: **Juan Garcia, individually and on behalf of all others similarly situated,
> v. 10 Roads Express, LLC and Eagle Express Lines, Inc.
> Docket No. 1:22-CV-02783 (JMA) (LGD)
> Our File No. 23868.00003
> Response to Plaintiff's Motion for Sanctions**

Dear Judge Dunst:

Our office represents Defendants, 10 Roads Express, LLC ("10RE") and Eagle Express Lines, Inc. ("EEL") (hereinafter together as, "Defendants") in the above-referenced matter. We write in response to Plaintiff's Motion for Sanctions, dated August 3, 2023. *See* Dkt. No. 40. As explained in further detail below, there is no basis to Plaintiff's allegations and Defendants respectfully request that the motion be denied in its entirety.

**Background**

Plaintiff Juan Garcia is a truck driver formerly employed by EEL, and subsequently by 10RE. Mr. Garcia alleges that he is entitled to approximately three years' pay as liquidated damages because he was a manual laborer who was required to be paid on a weekly basis rather than on a bi-weekly basis pursuant to the New York Labor Law. Mr. Garcia purports to bring this claim as a class action and has sought the jurisdiction of the Court under the Class Action Fairness Act.

This matter is presently in discovery. No class has been certified, no motion for class certification has been made, and no present or former employee of EEL/10RE, other than Mr. Garcia, has appeared in this case.

150 East 42nd Street | New York, NY 10017 | p 212.490.3000 | f 212.490.3038 | wilsonelser.com

Albany, NY | Atlanta, GA | Austin, TX | Baltimore, MD | Beaumont, TX | Birmingham, AL | Boston, MA | Charlotte, NC | Chicago, IL | Dallas, TX | Denver, CO
Detroit, MI | Edwardsville, IL | Madison, NJ | Garden City, NY | Hartford, CT | Houston, TX | Jackson, MS | Las Vegas, NV | London, England | Los Angeles, CA
Louisville, KY | McLean, VA | Merrillville, IN | Miami, FL | Milwaukee, WI | Nashville, TN | New Orleans, LA | New York, NY | Orlando, FL | Philadelphia, PA | Phoenix, AZ
Raleigh, NC | San Diego, CA | San Francisco, CA | Sarasota, FL | Seattle, WA | Stamford, CT | St. Louis, MO | Washington, DC | West Palm Beach, FL | White Plains, NY

285552539v.14

**Plaintiff's Motion is Baseless and Should be Denied Outright**

Mr. Garcia's present motion relates to EEL/10RE's communications with its employees in an attempt to individually resolve any potential claims.[1] As acknowledged by Plaintiff's counsel when he initially contacted our office to express his concerns, **there is no prohibition against EEL/10 RE communicating directly with its employees, particularly as here, where the employees are not yet class members and they are neither parties nor represented**. See *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 799 (Cal. Ct. App. Feb. 26, 2009); *see also Kaszovitz v. Qiao Xing Universal Res., Inc.*, 2012 U.S. Dist. LEXIS 111781 (S.D.N.Y. Aug. 7, 2012) (It is not improper to settle individual putative class members' claims prior to class certification, and it does not require court approval); *Picerni v. Bilingual Seit & Preschool, Inc.*, 925 F. Supp. 2d 368 (E.D.N.Y. Feb. 22, 2013) (Settling individual potential class members' claims prior to class certification does not violate Rule 23); *Ndrecaj v. 4 A Kids LLC*, 2017 U.S. Dist. LEXIS 101537 (S.D.N.Y. Jun. 27, 2017) (The Court addresses the concern that the defendant began trying to pick off people after the class certification motion was filed in order to moot the class); *Matarazzo v. Friendly Ice Cream Corp.*, 62 F.R.D. 65 (E.D.N.Y. 1974) (It is "a better practice to have releases from potential class members pre-approved by court but not requiring approval nor precluding defendant from communicating with potential class members.").

We note that a vast majority of courts have held that putative class members typically do not officially become clients of class counsel, until some point at or after class certification. ***See e.g.*** *Gortat v. Capala Bros., Inc.*, 2010 U.S. Dist. LEXIS 45549, at *16 (E.D.N.Y. May 10, 2010) (*citing In re Sch. Asbestos Litig.*, 842 F.2d 671, 679–83 [3d Cir. 1988] and *Erhardt v. Prudential Grp. Inc.*, 629 F.2d 843, 845 [2d Cir. 1980]); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986). In addition, a smaller number of courts have withheld client status until the opt-out period. ***See e.g.*** *Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 7775, at *2 (S.D.N.Y. Jan. 26, 2010). Hence, any communication with putative class members would not be considered inappropriate.

There is nothing untruthful or coercive in EEL/10RE's communications with its employees and plaintiff provides nothing more than speculation that the communications at issue are problematic. See *Greisler v. Hardee's Food Systems, Inc.*, 1973 U.S. Dist. LEXIS 14140, at *1-2 (E.D. Pa. Apr. 6, 1973) (engaging in interviews and/or affidavits are permissible communications between defendants and putative class members that can be useful for defeating class certification and addressing the merits of a plaintiff's claim); *Basco v. Wal-Mart Stores, Inc.*, 2002 WL 272384 (E.D. La. Feb. 5, 2002) (plaintiff provided "no evidence, **other than** speculation" that defendant was "attempting to coerce its employees to not participate in or 'opt out' of the suit."); *Agerbrink v. Model Serv. LLC*, 2015 U.S. Dist. LEXIS 145563, *10 (S.D.N.Y. Oct. 27, 2015) (citations omitted) (Plaintiff's burden to establish that the communication was improper). An employment relationship alone is not enough to demonstrate sufficient potential for coercion to merit relief under F.R.C.P. 23(d). See *Chen-Oster v. Goldman, Sachs & Co.*, 449 F.Supp.3d 216, 265 (S.D.N.Y. 2020); ***see also*** *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (rejecting argument that an employer-employee relationship alone evidence the coercion necessary to

---

[1] For clarity we note that the documents and communications at issue were not prepared by or with the involvement of this office and instead, were prepared internally by EEL/10RE.

overturn an arbitration agreement); *cf. Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (finding that defendant engaged in inherently coercive conduct by requiring workers to attend one-on-one meetings with managers in which workers were pressured to sign opt-out forms that were not in their primary language) and *Marino v. CACafe, Inc.*, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) (invalidating releases where the communications did not inform putative class members that there was a lawsuit pending that concerned their legal rights, the nature of the claims, plaintiff's counsel's contact information, the status of the case, or any other information that might have permitted them to allow them to make an informed decision about the waiver of their rights).

The communication sent by EEL/10RE advises employees of this lawsuit, the claim at issue, and EEL/10RE's position with respect to the same. The letter encourages recipients to make an informed decision, and the enclosed Settlement and Release expressly states "I understand that the Company will not retaliate against me or any other drivers for participating in or refusing to participate in this settlement." We have been informed that to date, a handful of current employees have stated that they are unwilling to participate in the settlement, and EEL/10RE has accepted and respected their decision without consequence, retaliation, threats of reprisal, termination, or other retribution.

Not only does the letter accurately identify the nature of the Plaintiff's claim and EEL/10RE's position that Plaintiff's claim lacks merit and that the lion's share of class action settlements go to class counsel, but it further discloses this lawsuit by name, case number and the court in which it is filed. The letter expressly states that EEL/10RE "want you to make an informed decision, so please read the documents and speak to your own attorney if you choose." ***See, e.g.***, *Agerbrink v. Model Serv. LLC*, 2015 U.S. Dist. LEXIS 145563, *18-19 (citing *In re M.L. Stern Overtime Litigation*, 250 F.R.D. 492, 499-500 [S.D. Cal. 2008][concluding letter sent to putative plaintiffs in misclassification lawsuit was not coercive or factually inaccurate because defendant's "opinion . . . that Account Executives function most effectively on behalf of their clients as 'exempt' employees, under a system that does not require timekeeping, required meal and rest breaks, and authorization to work overtime hours in order to receive premium pay, is permissible advocacy"]); *see also*, T. Eisenberg and G. Miller, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, www.uscourts.gov/sites/default/files/theodore_eisenberg_geoffrey_miller_attorneys_fees_in_class_actions_0.pdf; An Empirical Analysis of Federal Consumer Fraud Class Action Settlements (2010–2018), www.jonesday.com/en/insights/2020/04/empirical-analysis-consumer-fraud-class-action.

Regardless of whether *Misenhelder v. 1650 Broadway Associates, Inc.* is Plaintiff's counsel "smallest ever class settlements" and characterized now as a "totally different type of claim," the communication's reference to that case is based on Plaintiff counsel's own filings of record in that matter. Specifically, in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Settlement, Plaintiff's counsel states that the *Misenhelder* plaintiff brought the class action under federal and state laws including N.Y. Lab. L. § 191— which is the exact statute Garcia's states his putative class action claim under in this matter — and Plaintiff's counsel in fact settled the *Misenhelder* class claim for $91,500 and sought $30,500 of that amount as payment for its own attorneys' fees and costs. ***See*** *Misenhelder v. 650 Broadway Associates, Inc.*, 2010 WL

3997426 (S.D.N.Y.).

Finally, to the extent Plaintiff contends that the Defendants are seeking to buy favorable testimony, Plaintiff mischaracterizes the communication. The content of the verification is factual and no driver was required to execute it. In fact, we have been informed that to date, at least one recipient signed the settlement but not the verification, and EEL/10RE nevertheless promptly issued payment to that recipient per the terms of the settlement.

It is therefore respectfully requested that Plaintiff's motion for sanctions be denied in its entirety; there is no dispute that Defendants have a right as an employer to communicate directly with its employees, particularly with those who are not yet class members, parties to this litigation or represented by counsel.

It is Defendants' position that Plaintiff's motion is without merit and seeks to sanction communications no different than those typically used by plaintiffs' counsel in their outreach to sign up putative class members as clients. Defendants strongly assert that dismissal of the motion is the appropriate resolution of this dispute, but in the alternative, Defendants respectfully proffer that nothing other than an agreed-to supplemental communication would be warranted as an alternate resolution here.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

*/s/ Celena R. Mayo*

Celena R. Mayo
Yusha D. Hiraman

cc: Counsel of Record (via ECF)

285552539v.14