**Ogletree Deakins**

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys at Law*

2000 S. Colorado Blvd.
Tower 3, Suite 900
Denver, CO 80222
Telephone:  303-764-6800
Facsimile:   303-831-9246
www.ogletree.com

Marielle A. Moore
(720) 239-2956
marielle.moore@ogletree.com

September 6, 2023

**Via ECF**

District Judge Joan M. Azrack
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

**RE:** Garcia v. 10 Roads Express, LLC and Eagle Express Lines, Inc.
Case No. 2:22-cv-02783-JMA-LGD

Dear Judge Azrack:

My firm represents the Defendants, 10 Roads Express, LLC ("10 Roads") and Eagle Express Lines, Inc. ("Eagle Express"), in the above-referenced matter. Pursuant to section IV(B) of the Court's Individual Rules, we write in response to Plaintiff's letter dated August 17, 2023, regarding Plaintiff's motion for class certification pursuant to Fed. R. Civ. P. 23.

Class certification is appropriate "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Defendants respectfully submit that Plaintiff has not met the (1) numerosity, (2) typicality, or (3) adequacy pre-requisites for class certification set forth in Rule 23(a). Moreover, even if Plaintiff could meet the requirements of Rule 23(a), which Defendants maintain he cannot, he cannot establish that common issues of law and fact predominate over individual claims, as required for class certification pursuant to Rule 23(b)(3).

**I.   The Proposed Class Does Not Meet the Numerosity Requirement for Class Certification.**

"For a court to certify a class, Rule 23(a) requires a finding that the numerosity of injured persons makes joinder of all class members 'impracticable.'" *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Columbus ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Montréal (Canada) ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ Salt Lake City ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

1993)).  Plaintiff's proposed class of "all truck drivers who worked for Defendants [10 Roads and Eagle Express] in New York State at any time on or after May 12, 2016 (and who did not sign enforceable arbitration agreements)" consists of 29 potential members.

Of 129 truck drivers employed by both entities during the relevant time period, 48 signed valid, enforceable releases of their claims in this lawsuit.  A copy of these releases has been provided to Plaintiff pursuant to the Court's August 21st Order.  Of the remaining 81 potential class members who did not release their claims in this lawsuit, 10 signed arbitration agreements during their employment with Eagle Express, 8 of which transferred to 10 Roads with their employment.  Another 41 potential class members signed arbitration agreements directly with 10 Roads.  In all, 96 potential class members released their claims in this lawsuit, signed arbitration agreements, or both.  The remaining number of potential class members falls far short of the presumptive minimum of 40 and even farther short of the 100 required to maintain jurisdiction under the Class Action Fairness Act ("CAFA").  *See Sinclair v. Mike Bloomberg 2020, Inc.*, No. 1:20-CV-4528-LTS-GWG, 2023 WL 5509047, at *2 (S.D.N.Y. Aug. 25, 2023) (denying motion for class certification "[b]ecause the proposed class comprises fewer than one hundred individuals, as required by CAFA," and therefore, "the Court would lack jurisdiction of the action were the motion to be granted"); *Kim v. Trulia, LLC*, No. 19CV06733DLIRER, 2021 WL 8743946, at *1 (E.D.N.Y. Mar. 31, 2021) (dismissing lawsuit "based on the Court's independent finding that it lacks subject matter jurisdiction under CAFA").

Where, as here, the number of potential class members falls below 40, "courts must consider factors other than class size," including "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members."  *Ansari v. New York Univ.*, 179 F.R.D. 112, 114-15 (S.D.N.Y. 1998) (citations omitted).  There is simply "no evidence that permitting this suit to go forward as a class action is necessary to avoid a multiplicity of redundant lawsuits," as no potential class member other than Plaintiff has filed any similar lawsuit.  *Id.* at 115.  Nor is there any evidence of the "geographic dispersion of members of the proposed class," their financial resources, ability to bring individual suits, or lack of "monetary incentive to protect their own interests."  *Id.* at 115-16.  In the absence of such evidence, Plaintiff has not met his burden of establishing numerosity.

Plaintiff argues that some of the arbitration agreements are "invalid as they include provisions stating that the agreements are governed by the Federal Arbitration Act ('FAA')," which "explicitly carves out coverage of the drivers in question here."  *See* Dkt. No. 44, p. 2, n.1.  "At class certification," however, "the question for this Court to decide is not the validity of the agreement but whether the presence of class members that are potentially subject to the provision satisfies the requirements of Rule 23."  *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019).  If the Court considers the validity of the arbitration agreements governed by the FAA at this stage anyway, it should find they are valid.  The carve-out Plaintiff references applies only to exclude "contracts of employment" of transportation workers engaged in interstate commerce.  9 U.S.C. § 1.  Corporate representatives of both 10 Roads and Eagle Express testified that truck drivers' employment was not conditioned on their signing an arbitration agreement—a fact further reinforced by Plaintiff's being employed by both defendants without signing an arbitration agreement.

### II. Plaintiff's Claims Are Not Typical of the Claims or Defenses of the Class, and He Cannot Fairly and Adequately Protect the Interests of the Class.

Plaintiff's failure to sign an arbitration agreement is an insurmountable obstacle to class certification. Specifically, Plaintiff's claims are not typical of the claims or defenses of the proposed class, because a majority of the other potential class members did execute arbitration agreements. The 82 potential class members who signed arbitration agreements are thus subject to defenses that are inapplicable to Plaintiff. *See Jensen*, 372 F. Supp. 3d at 122 ("'In assessing the typicality of the plaintiff's claims, the court must pay special attention to unique defenses that are not shared by class representatives and members of the class.'") (quoting *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003)). For the same reason, "the interests of the absent class members do not coincide with [Plaintiff's] interests," and he cannot adequately represent the interests of the potential class members who are bound by arbitration agreements. *Id.* at 124-25. *See also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), abrogated on other grounds by *Microsoft Corp. v. Baker*, 582 U.S. 23, 137 S. Ct. 1702 (2017) ("Regardless of whether the issue is framed in terms of the typicality of the representative' s claims . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *Rocco v. Nam Tai Elec., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("Just as [the plaintiff] is subject to unique defenses questioning his typicality, this Court also finds him prone to the following unique defenses that jeopardize his adequacy."). Because Plaintiff cannot satisfy Rule 23(a)'s typicality or adequacy requirements, class certification is not appropriate. *See Jensen*, 372 F. Supp. 3d at 121-26 (plaintiff who opted out of arbitration agreement failed to satisfy typicality and adequacy requirements where majority of proposed class members were potentially bound by arbitration agreements).

### III. Plaintiff Cannot Establish Common Issues of Law and Fact Predominate Over Individual Claims.

To meet Rule 23(b)(3)'s predominance requirement, "Plaintiff must show that the 'more 'substantial' aspects of this litigation will be susceptible to generalized proof for all class members than any individualized issues.'" *Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435, 444 (E.D.N.Y. 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010)). Application of a common or blanket payment policy does not necessarily establish that a common question predominates. *Id.* The relevant inquiry in this case is whether each individual class member can be classified as a "manual worker" under N.Y. Lab. L. § 191. *See Id.* Determining whether potential class members were all "manual workers" will require highly individualized, week-by-week analyses to determine whether manually laborious tasks amounted to more than 25% of their job duties.

The record does not support Plaintiff's contention that all truck drivers "generally performed the same job duties." Plaintiff testified that every trucker driver had different routes and that his own routes varied in length from 1.5 hours to overnight. Plaintiff further testified that his pre-trip loading duties, if any, could take as little as 6 minutes or as long as 20 minutes. Similarly, his unloading duties, if any, could take 5 to 10 minutes. In contrast, another truck driver testified that assisting with unloading trucks took between 10 minutes to an hour per post office and that time spent loading and unloading varied depending on the type of cargo. Determining the percentage of "manual" work will, at a minimum, require detailed analysis of each driver's routes, including length and number of stops,

as well as the amount of time, if any, spent loading and/or unloading. Whether class members are "manual workers" is not "susceptible to generalized proof," and class certification is therefore inappropriate. *See Velasquez*, 303 F.R.D. at 444 (E.D.N.Y. 2014) (predominance requirement not met where individual questions existed to determine if each plaintiff was entitled to overtime).

I thank the Court for its time and attention to this matter.

                                        Respectfully submitted,

                                        */s/ Marielle A. Moore*

                                        Marielle A. Moore
                                        Of Counsel

MM:
None

cc:    **Via ECF**
       **JOSEPH & KIRSCHENBAUM LLP**
       Attorneys for Plaintiff
       Josef Nussbaum
       Denise Andrea Schulman
       Daniel Maimon Kirschenbaum
       32 Broadway, Suite 601
       New York, New York 10004
       Tel.: (212) 688-5640